# Staunton.

## Irene O. Wilkerson, and Others, v. Gilbert Wilkerson, and Others.

September 20, 1928.

The opinion states the case.

*S. S. Lambeth, Jr.,* for the appellants.

*F. P. Christian, Jr., Landon Lowry* and *Hunter Miller,* for the appellees.

HOLT, J., delivered the opinion of the court.

William Wilkerson, a citizen of Bedford county, died testate there in 1867. This suit was brought by the children of Ulysses D. Wilkerson, who are grandchildren of the testator. Its major purpose is to have his will construed and their interest in his estate ascertained and set aside. The will itself is short, and the entire estate is disposed of in one paragraph, its language being:

"Item. I give and bequeath to my son, Ulysses D. Wilkerson, one horse, to be chosen by himself from those that I am possessed of, and then for the residue of my property to be equally divided among my children and their heirs, viz: Margaret M. Wilkerson (and at her decease, the same to be divided among her children) Ulysses, D. Wilkerson, and an equal portion to my ........ William C. Wilkerson and his sister Capadocia Wilkerson, children of my son Parson

Wilkerson, deceased. And should any of the above named children or grandchildren die without issue, then it is my will that their portion shall revert back and be equally divided among the other legatees. And further having disposed of my property among my children and grandchildren, I make it binding on them to take care of my wife, Mary Magdaline Wilkerson, during her life. And lastly I do appoint my son, Ulysses D. Wilkerson, and my son-in-law, William O. Wilkerson, to be the executors of this my last will and testament.''

█ Ulysses was one of the executors. In the absence of definite testimony or charges, we will assume after sixty years that the personal property has been properly distributed, and pass to a consideration of the real estate. That consisted of two parcels, one containing 197 acres, in Bedford county, and the other 595 acres, in Campbell county.

The record is short and consists of a bill, the demurrer of Gilbert Wilkerson, and an original and supplemental demurrer filed on behalf of Francis F. Fauntleroy and J. D. Fauntleroy. These demurrers were sustained and the bill dismissed by decree of September 3, 1927.

This cause turns wholly upon the proper construction of the will. This is the plaintiff's claim:

1. That under the will Margaret Wilkerson took a life estate because in parentheses testator says ''(and at her decease the same to be divided among her children),'' and her children took a conditional fee, conditioned to be forfeited should they die without issue; but that Ulysses (testator's child) took a fee simple, there being no limitation by way of remainder in his case as there was in Margaret's; and that the children of Parson, testator's deceased child, took also a conditional fee as did the children of Margaret.

2. That the limitation of the fee expressed in the words: "And should any of the above named children or grandchildren die without issue then their portion shall revert back," etc., applies to all of the children and grandchildren, as fully as if he had said "the above mentioned children or grandchildren" instead of "above named."

The defendants contend that the will is unambiguous, simple, and should be construed as written, and that no interest of any distributees should fall back into the estate unless there is some definite provision to that effect.

Its language is: "And should any of the above named children or grandchildren die without issue, then it is my will that their portion shall revert back and be equally divided among the other legatees." The children and grandchildren named are Margaret M. Wilkerson, Ulysses D. Wilkerson, children, and William C. Wilkerson and Capadocia Wilkerson, children of decedent's son, Parson Wilkerson, then dead. These are named and none others are. Their claim is that since none of the above named children or grandchildren died without issue, this provision of the will was never operative—that no interest of any legatee fell back into the estate.

This position is, upon familiar principles, we think, sound. Two things are to be remembered. Every word and provision in a will must be given some meaning when it is possible to do so, and courts should not undertake to give nice construction to testamentary provisions, plain as written, and which in fact call for no construction at all. There can be no confusion as to who were the "above named children or grandchildren," and there is no dispute about the fact that all of the children and grandchildren named in

the will had issue. This provision applies to them alone in language so plain that argument darkens counsel. *Valentine* v. *Moseley*, 139 Va. 334, 123 S. E. 525.

· An attached sketch, showing the descendants of William Wilkerson, helps us to make plain just what the issues are.

WILLIAM WILKERSON (testator)

Parson, (son who predeceased testator)

Margaret (now dead) life estate with remainder to her children

Ulysses (now dead)

Wm. C.     Capadocia

Deceased children of Margaret—all dead without issue

Appellants, all children of Ulysses

(Children of Wm. C.)     (Children of Capadocia.)

W. H. Wilkerson
Sam. C. Wilkerson
N. B. Wilkerson.

Nannie Kate Musgrove
Sarah C. Musgrove
Annie E. Musgrove
Oland B. Musgrove
Sybel B. Musgrove

Gilbert Wilkerson is in possession of the 197-acre tract in Bedford county, and asserts title thereto in absolute estate. This is his chain:

By deed of date September 28, 1886, William C. Wilkerson and Mary, his wife, Capadocia Wilkerson, Ulysses Wilkerson and Martha, his wife, undertook to convey to Margaret M. Wilkerson, with general warranty, their interest in the Bedford county land. That deed was signed by W. C. Wilkerson and Mary, his wife, and Capadocia Wilkerson. It was not signed by Ulysses Wilkerson and his wife, but was acknowledged by them before two justices. It was also acknowledged by William C. Wilkerson and wife, and though signed by Capadocia Wilkerson was not acknowledged.

In England it was not always necessary that a deed be signed. A seal was sufficient. This rule was probably due to the fact that many landholders, when the law of conveyancing was taking form, had but a casual acquaintance with chirography. Minor on Real Property, section 2, states the law to be: "Sealing alone (without signing) was sufficient in England to authenticate a deed, until the statute 29 Car. II, chapter 3, expressly directed *signing* in grants of land and some other kinds of deeds. But in Virginia we have not adopted, in our statute of conveyances, a similar phraseology, and it seems, therefore, very questionable whether as a *general* proposition, a deed which is *actually sealed* is with us required to be *signed* also. But in case of a *married woman's conveyance* of her equitable separate estate, or where she unites with her husband to release her contingent dower interest, it is expressly required that it shall be signed by both husband and wife."

There was no signature of Ulysses to the deed of September 28, 1886, no seal, and not even a scroll by way of seal, and so that instrument was wholly without effect so far as Ulysses was concerned. It did serve, however, to vest in Margaret M. Wilkerson the interest of the children of Parson Wilkerson; that is to say, it gave her title to two-thirds of the Bedford county farm. For the purposes of this suit it is not necessary to consider the effect of Capadocia's failure to acknowledge it.

Margaret M. Wilkerson died in 1900, leaving to survive her, her husband and sons, William H. Wilkerson and Thomas J. Wilkerson. Her husband, by deed of date November 18, 1904, conveyed his interest in this farm to William H. Wilkerson and Thomas J. Wilkerson. Afterwards, William H. Wilkerson, by deed the date of which is not stated in the bill, conveyed his interest to his brother, Thomas J. Wilkerson. Thomas J. Wilkerson died in 1925. His will was admitted to probate in the clerk's office of that county on January 4, 1926. In it he devised all of his land to the defendant, Gilbert Wilkerson.

From this it appears that this defendant is the owner of record of a two-thirds interest in the Bedford county land, while the plaintiffs, children of Ulysses, are the owners of record of a one-third interest therein. It is said that they are barred by adverse possession and laches from setting up their claim at this late date. This may be true and it may not. As to it we express no opinion. Laches in many instances is a mixed question of law and fact, and for that reason should not usually be disposed of on demurrer. These defenses and such others as Gilbert Wilkerson is advised that he should make, may be presented when the cause comes on to be heard upon its merits.

What we hold is, that the children of Ulysses Wilkerson, plaintiffs below, as such, have a *title of record* to a one-third interest in this 197-acre Bedford county farm.

Next to be considered are the interests of Francis F. Fauntleroy and J. D. Fauntleroy. Their claims are in the 595-acre tract in Campbell county, and do not touch the Bedford county land at all.

It appears from exhibits filed with the bill that in 1866 there was a suit pending in Bedford county court under the style of *"Wilkerson, etc. v. Wilkerson,"* whose purpose was to partition the real estate of William Wilkerson. Certainly, commissioners were named. These commissioners, duly appointed, made this partition, but did not report it to the court for confirmation. It was, however, satisfactory to everybody, and so all of the parties interested, or at least all who thought they were interested, by deed of date January 26, 1884, partitioned this Campbell county land among themselves in accordance with the findings which the commissioners had in fact actually made. In this deed of partition, William O. Wilkerson and Margaret, his wife, and Ulysses D. Wilkerson conveyed, with general warranty of title, unto William C. Wilkerson and Capadocia Wilkerson all their interest in a 168-acre tract, that being that part of the 595-acre tract which was allotted to these grantees. And in like manner, and with like covenants of warranty, William C. Wilkerson and Capadocia Wilkerson, William O. Wilkerson and Margaret, his wife, conveyed to Ulysses D. Wilkerson 198 acres, that being the tract it was agreed he should have. In this same deed William C. Wilkerson, Capadocia Wilkerson and Ulysses D. Wilkerson conveyed, with like warranty unto William O. Wilkerson and Margaret, his wife, the tract of 228 acres, which had

by the commissioners been set apart for Margaret. In other words, these parties, by an agreement between themselves, partitioned the Campbell county land, and all those who were interested, or thought they were interested, conveyed, with covenants of general warranty, to Margaret M. Wilkerson, daughter of the testator, as her interest therein, this 228 acres in dispute.

By deed of date June 5, 1886, Ulysses D. Wilkerson and wife conveyed to David Karn and John Hickson the 198-acre tract which had been allotted to Ulysses.

On September 28, 1886, Margaret M. Wilkerson and husband conveyed to David Karn and John Hickson the 228-acre tract allotted to Margaret.

On January 24, 1890, David Karn conveyed to John Hickson his interest in these lands, and John Hickson, on October 30, 1894, conveyed his interest to William V. Wilson, trustee. They were sold by the trustee and purchased by H. M. Buck, the deed to him bearing date February 13, 1896.

On March 28, 1911, Buck and wife conveyed to Francis F. Fauntleroy the 228-acre tract, who now holds it. Buck, on December 1, 1919, sold his interest in the 198-acre tract to W. A. Andrews, and Andrews, by deed of date March 15, 1920, conveyed his title to the defendant, J. D. Fauntleroy, who is the present holder.

██ Relative to this 228 acres of land held by Francis F. Fauntleroy, it is well to bear in mind plaintiffs' exact claim. It is this: They say that Margaret M. Wilkerson took only a life estate. This, under the plain language of the will, we think is true. It is next said that her children died without issue, and that their one-third interest fell back and into the estate of William Wilkerson, and under the will passed to his son, Ulysses, and from Ulysses to them. The

break in this line of reasoning is that the children of Margaret M. Wilkerson are not named in William Wilkerson's will, and since they are not named, their estate passed, not under the will, back to their grandfather's estate, but directly to their next of kin under the statute of descents and distribution. Every assignment of error rests upon these assumptions, and having so placed their case they must succeed or fail on the issues thus made. A man cannot assert one title and recover on the strength of another.

Plaintiffs must fail for another reason. If the Margaret M. Wilkerson interest went back to the William Wilkerson estate, and passed from it to Ulysses Wilkerson, and afterwards to his heirs, his children, the plaintiffs here, we have this situation: Ulysses Wilkerson's deed to Margaret M. Wilkerson was with general warranty. He believed he had the right to execute such a deed. If he was mistaken in this, he was still bound by his covenant, and any interest in this property which afterwards came to him, passed to his grantees. Virginia Code, 1919, section 5202.

If possible for stronger reasons, the title of J. D. Fauntleroy cannot be disturbed. The 198 acres was deeded to Ulysses as his share, and Mr. Fauntleroy claimed under him by an unbroken line. Ulysses' children have no better right to question the Fauntleroy title than their father had, and he had none at all.

From what has been said, it appears that so much of the demurrer as in substance held that the children of Ulysses D. Wilkerson, as a matter of law, had no interest in the Bedford county land is set aside, and that issue is remanded to the trial court to be heard upon its merits, and in all other matters the decree of the trial court is affirmed.

*Modified and affirmed and remanded.*