# Richmond

## CHARLEY MATNEY v. A. D. McCLANAHAN, ET AL.

November 28, 1955.

Record No. 4414.

Present, All the Justices.

The opinion states the case.

*S. H. & George C. Sutherland*, for the appellant.

*A. G. Lively, J. K. McCoy* and *F. H. Combs*, for the appellees.

MILLER, J., delivered the opinion of the court.

Charley Matney, complainant in the circuit court and hereinafter so designated, filed his bill against Buchanan Realty Corporation,

William S. Stokes, Jr., Inc., Preston Mining Company, Inc., A. D. McClanahan, and nine other individuals, hereinafter called defendants. He sought removal of a cloud from his title to mineral rights under a tract of land, an injunction against defendants restraining them from trespassing upon the land, an accounting for the value of coal removed therefrom, and recovery of the statutory penalty provided for in § 45-91, Code of 1950,[1] for mining within five feet of the boundary line of the land under which he claimed the minerals.

Demurrers interposed by the several defendants were sustained by decree of April 27, 1954, with leave to complainant to file an amended bill "if he be so advised." The demurrers were sustained chiefly on the ground that the allegations of the bill were involved, indefinite and insufficient. Complainant elected to rely upon his original bill and by decree of September 24, 1954, it was dismissed. From that final decree which carried into effect the court's decision embodied in the decree of April 27, 1954, we granted an appeal to complainant.

The bill of complaint consists of ten printed pages, to which are attached seventeen exhibits comprising twenty-four additional pages. In it complainant asserts that he and the Buchanan Realty Corporation are owners as tenants in common of all coal, oil, gas and other minerals, together with the mining rights and privileges in, upon and underlying a tract of land of thirty acres more or less on Twin Branch of Slate Creek in Buchanan county, Virginia. The description in the bill of this tract of 30 acres is by calls and distances, and metes and bounds. Without a survey or plat, it is difficult to determine where the boundary lines are located and where this tract borders adjoining lands owned by some of the defendants.

Complainant's chain of title, beginning with a grant from the Commonwealth to S. L. Graham of September 20, 1883, is set out in the bill by listing the numerous muniments of title (*i.e.*, the seventeen exhibits) by which complainant traces and asserts his owner-

---

[1] No owner or tenant of any land containing coal, sulphur or other minerals, within this Commonwealth, shall open or sink, dig, excavate or work in any mine or shaft on such land within five feet of the line dividing such land from that of another person, without the consent, in writing, of every person interested in or having title to such adjoining lands in possession, reversion or remainder, or of the guardian of any such person as may be an infant. If any person violates this section, he shall forfeit five hundred dollars to the party injured or to any one whose consent is required but not obtained.

ship and that of Buchanan Realty Corporation of the mineral rights in the 30 acres. The exhibits are copied at length but the descriptions in these numerous instruments are indefinite and the boundary lines difficult to ascertain. In one of the links of title, *i.e.*, a deed from Nancy M. Honaker to Reese T. Smith, dated December 10, 1903, the description may not embrace all of the land granted in prior and subsequent deeds in the chain of title. This discrepancy and inadequacy in the description is admitted in the bill of complaint in the following language:

"Your complainant is advised that there is some question as to whether the aforesaid 30 acre grant * * * covers all of the land to the top of the ridge at the head of the right-hand fork of Twin Branch, said ridge being the main ridge between the right-hand fork of Twin Branch and White Oak Branch, both being waters of Slate Creek, in Buchanan county, Virginia. However, as your complainant is informed, believes and here charges, it was the intention of all of the said muniments of title and all of the owners thereof that all of the aforesaid muniments of title covered and included all of the land on the right-hand fork of Twin Branch to the top of said ridge."

In short, the description in this deed from Nancy M. Honaker to Reese T. Smith may not include certain area extending "to the top of the ridge at the head of the right-hand fork of Twin Branch" that was included in prior and subsequent grants through which complainant claims ownership of the minerals and mining rights in and under this tract of land.

The bill then alleges that on September 12, 1889, William H. McClanahan obtained a grant to 136 acres of land which "covers a part of the 30-acre grant" made to S. L. Graham and that McClanahan thereafter conveyed 86 acres of this tract to his son, Floyd McClanahan, and by his will devised the remaining 50 acres to his two daughters, Lydia Davis and Sara M. Smith. It is charged that these two tracts of land, 86 acres and 50 acres, by mesne conveyances came into the ownership of certain of the individual defendants and part of these two tracts overlap a part of the 30-acre tract. However, no plat or survey is filed showing the location of the 30-acre tract with reference to the other tracts, nor is there any plat to show where the alleged interlock or interlocks are located. The area of interlock is not stated in acreage or designated by metes and bounds or any description.

It is further alleged that Buchanan Realty Corporation (tenant in common with complainant) had leased and granted to R. W. Massey, C. W. Massey and J. P. Mann all of the coal under the 30 acres, that those lessees had in turn granted their right to mine the coal to William S. Stokes, Inc., and that corporation had also acquired rights from A. D. McClanahan and other claimants of the 86 and 50-acre tracts to mine coal under those tracts. It is then charged that these several rights so obtained by that corporation had been deeded and transferred to Preston Mining Company, Inc. Complainant finally alleges that the Preston Mining Company was encroaching upon and mining coal in the area or areas where the two larger tracts of land interlock with the 30-acre tract and that the defendants had violated and were violating the provisions of § 45-91.

Complainant prays that the cloud be removed from his title and that of Buchanan Realty Corporation to the minerals under the thirty acres caused by the alleged overlapping of grants of the other two tracts of land, that an injunction be awarded forbidding each and all defendants from trespassing upon the 30 acres, that the statutory penalty provided for in § 45-91 be imposed against the defendants for each time that they have mined coal nearer than five feet to his line, and that defendants be required to account to complainant for the coal removed from the 30 acres.

Complainant has failed to allege where the lines of the 30-acre tract are located with reference to the 86 and 50-acre tracts and has failed to state definitely and clearly what part or parts of the 30-acre tract are included within the alleged interlock or interlocks with the other two tracts of land. Yet having failed to allege these material facts, he seeks to have the cloud or clouds removed from that unlocated and undescribed portion of the 30 acres and to enjoin the defendants from trespassing thereon or removing coal from that undefined area. Having failed to state or show just what area is in controversy, he also seeks to have an accounting from his tenant in common, Buchanan Realty Corporation and all other defendants for the value of the coal removed, and asks recovery of $500 forfeitures for each time that any defendants have mined coal within five feet of his property.

Among the grounds of demurrer relied upon by defendants were (a) complainant had not alleged or definitely stated what portion of the thirty-acre tract was in controversy, (b) and complainant

had failed to state or show where the line or lines were located that defendants were charged with having mined closer to than five feet.

In equity pleading regard is given to substance rather than form, yet that does not relieve a complainant of the necessity of alleging with reasonable clarity every fact essential to the granting of the relief sought. The bill must allege facts and show upon its face with reasonable certainty that complainant is entitled to the relief demanded. The defendants are not called upon to answer a bill that does not inform them of the nature of the case they are required to meet. 7 M. J., Equity, § 51, pp. 79 and 80.

"The defendant is supposed to know the plaintiff's grievances *only from his statement of them in the bill;* and it is to the *precise case thus stated,* and to that case only, that the *defendant can be required to answer,* * * *" Lile: *Equity Pleading and Practice,* 3d ed., § 100, p. 61. *Stanley* v. *Mullins,* 187 Va. 193, 45 S. E. (2d) 881.

"The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. It is the *sine qua non* of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. * * * Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense." *Potts, etc.* v. *The Mathieson Alkali Works,* 165 Va. 196, 207, 181 S. E. 521.

The allegations of complainant's bill were vague, involved and uncertain. The inadequate descriptions of the tracts of land did not advise defendants of the location, lines or dimensions of the area or areas that they were charged with wrongfully mining. They could not intelligently answer or defend the indefinite allegations and charges made in the bill. Clearly they were entitled to more certain and definite allegations of fact and to have the complainant describe with certainty the area or areas from which they were charged with wrongfully removing coal. Yet when the demurrers were sustained because of these defects and insufficiencies, complainant failed to avail himself of the leave granted him to file an amended bill.

The chancellor committed no error when he required complainant to state a more definite case, nor was any error committed in dismissing the bill when complainant elected to rely upon his allegations and charges as formulated and contained in his original bill. The decree appealed from is affirmed.

*Affirmed.*